IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHARLES HARRIST, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CASE NO. 2:13-CV-009-JRG |
| UNITED STATES OF AMERICA, | § § § | |
| *Defendant*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant United States' Motion to Dismiss in Part Based on Lack of Subject Matter Jurisdiction (Dkt. No. 8) and Motion to Transfer Venue Under 28 U.S.C. § 1404(a), filed June 20, 2013, and August 5, 2013, respectively.

This case concerns allegedly negligent medical treatment of Plaintiff Charles Harrist administered while Harrist was incarcerated at federal correctional facilities in Yazoo City, Mississippi ("FCI-Yazoo City") and Beaumont, Texas ("FCC-Beaumont"). Defendant argues, first, that this Court does not have jurisdiction over Plaintiff's claims against the United States relating to the actions of independent contractors in its Beaumont facility; and second, that venue for this case is more convenient in the Southern District of Mississippi.

For the reasons stated below, the Court **GRANTS** both motions.

## I. FACTUAL BACKGROUND

Plaintiff's Complaint alleges negligent medical treatment by physicians, nurses, and their assistants at FCI-Yazoo City and FCC-Beaumont (Dkt. No. 1). The Complaint alleges failure to adhere to the appropriate standard of care with respect to the diagnosis and treatment of

1

Plaintiff's corneal perforation, including "failure to refer the Plaintiff to a qualified surgeon and facility." *Id.* The Court can find no allegation in the Complaint that can be construed to apply to anyone other than medical personnel, for anything other than medical malpractice. Notably, there are no allegations that Bureau of Prisons ("BOP") officials interfered with the decisions of medical professionals or failed to comply with medical professionals' instructions.

The medical personnel at FCC-Beaumont are at least nominally employees, not of the BOP, but of the University of Texas—Medical Branch (UTMB), which contracts with the United States to provide medical services at that facility (Dkt. No. 8-1, at 1). Under the terms of this contract, BOP paid UTMB a flat per-day, per-inmate rate, and in exchange UTMB provided all required medical, psychiatric, and dental services to FCC-Beaumont inmates. *Id.* at 2. UTMB employees working at FCC-Beaumont were paid by UTMB and were not extended BOP's health benefits, retirement benefits, or leave benefits. *Id.* The contract with UTMB expressly specifies that UTMB is an independent contractor, and that UTMB's employees are not employees of the United States. (Dkt. No. 8-2, at 30-32). BOP involvement in treatment decisions is specifically disclaimed. *Id.* at 32.

## II. SUBJECT MATTER JURISDICTION

### A. Legal Standards

The United States enjoys sovereign immunity from suit, and the Court may assert jurisdiction over claims against the United States only where the Government has waived its immunity. *Broussard v. United States*, 989 F.2d 171, 173 (5th Cir. 1993). The Federal Tort Claims Act (FTCA) waives immunity for tortious acts committed by any "employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). For purposes of the FTCA, an "employee of the government" includes "officers or employees of

any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. A "federal agency" specifically does *not* include "any contractor with the United States." *Id.* Thus, sovereign immunity remains operative with regard to the actions of persons who are not employees of the United States, and the Court lacks jurisdiction in cases where the United States is sued for those actions. *See Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998).

"The critical factor in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual." *Id.* However, the Court also considers other factors traditionally applicable in agency law, including:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is a part of the regular business of the employer;
>
> (i) whether or not the parties believe they are creating the relation of master and servant; and

3

(j) whether the principal is or is not in business.

*Id.* at 275-76 (quoting RESTATEMENT (SECOND) OF AGENCY § 220 (1958)).

B. Analysis

Here, Defendant submits substantial factual evidence supportive of the finding that FCC-Beaumont's medical staff are independent contractors. The contracts submitted by the United States clearly indicate that UTMB employees are expected to exercise independent judgment and are not under BOP's physical control. The contract, and the declaration of BOP's contracting officer, also suggest that (a) BOP exercises little, if any, control over the details of UTMB's work; (b) UTMB supplies the primary instrumentalities and tools of the work; and (c) the parties believed they were not creating an employer-employee relationship. Moreover, it is obvious to the Court that (a) medicine is a distinct occupation; (b) medical care is usually done by a specialist without supervision from non-professionals; and (c) substantial skill is required for the provision of medical services. These facts all support the finding that UTMB employees are properly treated as independent contractors.

The evidence in the record does not support any conclusion with respect to the length of time for which UTMB employees are employed. Moreover, the method of payment, which involves a per-prisoner per-day fee, could arguably be characterized as both "by time" and "by job" and does not strike the Court as an important factor here. Although "the regular business" of the BOP includes furnishing medical care, insofar as the BOP has custodial responsibility for all aspects of its inmates lives, medical care is sufficiently distinct from the ordinary business of running a prison that this factor does not cut against finding independent contractor status in this case.

Of course, if, despite the evidence Defendant produces, UTMB contractors were nonetheless *actually* under BOP's physical control, UTMB employees might be considered employees of the government covered by the FTCA. If Plaintiff had alleged such control over UTMB, and supported his allegation with specific facts or even a request for discovery on the subject, the Court would be faced with a more difficult question. As it stands, however, Plaintiff does not appear to materially contest the contractor status of UTMB employees at FCC-Beaumont.[1] Rather, Harrist argues that "the negligence alleged is a failure to meet the standard of care in the diagnosis and treatment of a serious eye condition and then the failure to refer and transport the Plaintiff once that diagnosis had been made" (Dkt. No. 9, at 2). He alleges "medical treatment by prison personnel in Beaumont, Texas" and a "decision not to transport, refer, or treat the Plaintiff . . . made by BOP administrators—not medical personnel" *Id.* at 3.

Plaintiff requests jurisdictional discovery, but does not detail the information sought. Indeed, the discovery request appears to be aimed at the question of "the ultimate decision makers or their locations" rather than the employee/contractor status of UTMB employees. In light of Plaintiff's failure to contest the compelling evidence presented by Defendant, the Court finds that UTMB employees who provided medical services to Plaintiff at FCC-Beaumont are independent contractors for whose actions the United States has not waived sovereign immunity under the FTCA. Accordingly, this Court lacks subject matter jurisdiction to resolve the instant

---

[1] Indeed, Plaintiff concedes that "[i]t appears they may be contractually covered for any malpractice by the contract in Exhibit A of the Defendant's motion" (Dkt. No. 9, at 3). This concession goes to liability rather than employee/contractor status, but, in the absence of argument that *is* on point, suggests that Plaintiff does not seriously contest UTMB employees' status.

5

claims respecting the actions of UTMB employees, and must dismiss Plaintiff's claims. This dismissal does not preclude Plaintiff from seeking relief through the courts of the State of Texas.

Plaintiff has also alleged medical malpractice on the part of BOP personnel and administrators. To the extent that Plaintiff alleges malfeasance by BOP employees, the Court retains jurisdiction under the FTCA. Whether BOP personnel at FCC-Beaumont administered medical treatment of any kind to Plaintiff or interfered with UTMB employees' treatment decisions is a matter of fact going to the merits of the case.

## II. VENUE

### A. Legal Standards

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Fifth Circuit has enunciated the standard to be used in deciding motions to transfer venue. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (*Volkswagen II*). The moving party must show "good cause," and this burden is satisfied "when the movant demonstrates that the transferee venue is clearly more convenient." *Id.* at 314.

The initial threshold question is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the Court must weigh the relative conveniences of the current district against the transferee district. In making the convenience determination, the Fifth Circuit considers several private and public interest factors, none of which are given dispositive weight. *Id.* "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make

trial of a case easy, expeditious and inexpensive.'" *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law.'" *Id.*

B. Analysis

Here, Defendant requests a transfer to the Southern District of Mississippi. As an initial matter, it is clear that this suit could have been brought in that district. Under the FTCA, a plaintiff may bring a claim "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Plaintiff alleges harms that initially occurred in Yazoo City, Mississippi, which is in the Southern District of that state. Thus, this suit could have been filed as an original matter in the potential transferee venue.

The private interest factors outlined in *Volkswagen II* favor transfer. First, there are apparently relevant records in both the Eastern District of Texas and the Southern District of Mississippi. This factor is neutral. However, as noted above, this Court does not have subject matter jurisdiction over the tortious conduct of UTMB personnel at FCC-Beaumont, who, according to the undisputed facts submitted by Defendant, appear to constitute most, if not all, of the medical treatment personnel at that facility (Dkt. No. 18-2). In contrast, the medical providers in Yazoo City are, by admission of Defendant, employees of BOP (Dkt. No. 18-3). Thus, the focus of Plaintiff's legally cognizable claims appears to be in Yazoo City, not Beaumont. Also, in or near Yazoo City there are "multiple persons employed within the health services area by the Bureau of Prisons," whom Defendant identifies as potential witnesses in the case (Dkt. No. 18, at

7). These witnesses can reasonably be expected to reside outside the Eastern District of Texas and beyond the reach of this Court's subpoena power. Fed. R. Civ. P. 45. Moreover, the Southern District of Mississippi will clearly be the more convenient and less costly venue for willing Yazoo City witnesses: Yazoo City is 264 miles from Marshall, Texas and only 47 miles from the Southern District of Mississippi's Courthouse in Jackson, Mississippi (Dkt. No. 18, at 7).

The public factors in *Volkswagen II* also support transfer. Though there is no evidence supporting a conclusion that either court is significantly more congested, the Southern District of Mississippi clearly has a local interest in litigation related to the BOP facility in its local community. Additionally, since the FTCA ties the government's liability to "the law of the place where the act or omission occurred," and the focus of Plaintiff's claims is in Mississippi, this Court expects the Southern District of Mississippi to be more familiar with relevant governing law than this Court. 28 U.S.C. § 1346(b)(1).

In response to Defendant's motion to transfer, Plaintiff argues, first, that Plaintiff's choice of venue should be the primary factor in determining venue. Although it is Defendant's burden to prove that a case should be transferred, Plaintiff's choice of venue by itself is not controlling in the face of Defendant's evidence. Next, Plaintiff argues that venue in the Eastern District of Texas is more convenient and inexpensive for himself and his counsel. *Volkswagen I* specifically disclaims the relevance of counsel's location. Any additional expense to Plaintiff that might be incurred by travel to Jackson is trumped by the substantial inconvenience to the numerous third-party witnesses identified by Defendant. Finally, Plaintiff identifies four medical providers who reside in Texas and Louisiana for whom it would be more convenient to travel to Marshall than Jackson, and one expert witness from Baltimore, Maryland. With the exception of

8

the expert from Maryland (who can surely travel as easily to Jackson as to Marshall), Plaintiff does not identify which of these providers can be expected to be witnesses. Moreover, though some of these providers will be able to testify to Harrist's medical condition, they will not apparently have knowledge of the treatment at FCI-Yazoo City which is the focus of this case.

Accordingly, it is clear that this case is more conveniently tried in the Southern District of Mississippi than in this Court.

## IV. CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss in Part Based on Lack of Subject Matter Jurisdiction (Dkt. No. 8) is **GRANTED**. All of Plaintiff's claims relating to medical treatments administered by employees of the University of Texas—Medical Branch while Plaintiff was an inmate at the Federal Corrections Center—Beaumont are hereby **DISMISSED WITHOUT PREJUDICE**. To the extent that Plaintiff alleges medical malpractice against BOP administrators located at FCC-Beaumont, this Court finds that it does have jurisdiction and those claims are retained, subject to the transfer ordered below.

(2) Defendant's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) (Dkt. No. 18) is **GRANTED**. This case is hereby transferred to the United States District Court for the Southern District of Mississippi.

**So Ordered and Signed on this**

**Dec 5, 2013**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE